IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHRISTOPHER BUESCHER,           )
                                )
            Plaintiff,          )
                                )
vs.                             )   Case No. 16-cv-616-JPG-CJP
                                )
NANCY A. BERRYHILL,             )
Acting Commissioner of Social Security, )
                                )
            Defendant.[1]       )

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Christopher Buescher, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for DIB on March 26, 2013, alleging disability beginning December 24, 2011. (Tr. 18.) After holding an evidentiary hearing, Administrative Law Judge (ALJ) Bradley Davis denied the application in a written decision dated December 1, 2014. (Tr. 25.) The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1.) Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ erred in not considering plaintiff's diagnosis of lumbar failed back surgery syndrome.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. *See* https://www.ssa.gov/agency/commissioner.html (visited Feb. 7, 2017). She is automatically substituted as defendant in this case. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

2. The ALJ erred in not considering plaintiff's cane usage.

3. The ALJ erred in not considering plaintiff's prescribed pain medication and spinal cord stimulator.

**Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity ("RFC") and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008); *accord Weatherbee v. Astrue*, 649 F.3d 565, 568-69 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984); *see also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. . . . If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time but whether

the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *See Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence, *i.e.*, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## **The Decision of the ALJ**

ALJ Davis followed the five-step analytical framework describe above. He determined that plaintiff had not been engaged in substantial gainful activity since December 24, 2011, and had a severe impairment of degenerative disc disease status post-operative. (Tr. 20.) The ALJ further opined that plaintiff had the RFC to perform sedentary work, except that he needed to alternate between sitting and standing; he could do a job sitting for one hour, then he would need to shift positions; he could not use his lower extremities for use of foot controls; and he could not work around occupational hazards such as unprotected heights or dangerous machinery. (Tr. 21.) The ALJ then found that although plaintiff could not perform any past relevant work, he was not disabled because he could perform jobs that existed in significant numbers in the national economy. (Tr. 24.)

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

**1.     Agency Forms**

Plaintiff was born on January 9, 1981, and was last insured on December 31, 2016. (Tr. 171.) Plaintiff completed two years of college in 2005 and also graduated from the police academy that same year. (Tr. 175.) He previously worked as a police officer and in security from 1999 to December 2011. (Tr. 183.)

Plaintiff alleged that lumbar injuries, the limited use of his left leg, and "hpt" limited his ability to work. (Tr. 174.) Specifically, he stated that he had not been released to perform any work and had to lay down most of the day due to pain and numbness in his left leg and pain in his back. Additionally, he was not supposed to lift anything and he walked with a cane. (Tr. 186.)

From the time he woke up until the time he went to bed, plaintiff reclined or lay down while watching television. The pain interrupted his sleep. Plaintiff's wife helped him put on his socks and shoes, and he had to use a shower chair. He was unable to stoop over the sink to shave and had difficulty getting up and down from the toilet. (Tr. 187.) He microwaved frozen dinners each day but could not perform any other household chores. (Tr. 188.) Plaintiff could walk less than a block with a cane before needing to stop and rest. (Tr. 191.)

In a subsequent disability report from November 2013, plaintiff stated that his pain had worsened since his previous report. (Tr. 210.) He also stated that his conditions further limited his ability to care for his personal needs and perform daily activities. (Tr. 213.)

### 2. Evidentiary Hearing

Plaintiff was represented by counsel at the evidentiary hearing, conducted on November 5, 2014. (Tr. 32.)

Plaintiff testified that he lived with his wife and three children, ages six, eight, and ten. He did not perform any household chores because he could not lift anything without pain and had to lie down or recline most of the time. (Tr. 37-38.)

Plaintiff last worked on Christmas Eve 2011, when he fell and shattered his L5-S1 disc in his back. Plaintiff used a spinal stimulator and was instructed not to lift anything weighing more than a gallon of milk. He was restricted to lying or sitting in a reclined position. (Tr. 38.) Plaintiff denied any other medical issues. Plaintiff had surgery with instrumentation, a spinal fusion, injections, and a spinal stimulator placed. He also attended pain management and physical therapy. At the time of the hearing, plaintiff received treatment from Dr. Davee.[2] (Tr. 39.) Dr. Davee believed that further surgery would exacerbate plaintiff's nerve damage and radiculopathy. Plaintiff took Oxycodone, Lisinopril for high blood pressure, and Ativan for depression and anxiety. (Tr. 40.) He wore a spinal stimulator at all times, beginning two months prior. He was prescribed a cane and had been using it for three years. Plaintiff could usually stand for approximately ten to twelve minutes. Plaintiff spent his days either lying in bed, watching television, or reclining. He tried to walk around the house but that was "too much." (Tr. 41.)

Dr. Buchowski told plaintiff he needed a cane following surgery. Plaintiff purchased the cane from Walgreens. Dr. Davee and Dr. Rudolph also told plaintiff he needed a cane. (Tr. 42.) The spinal cord stimulator helped alleviate some of plaintiff's pain. (Tr. 43.)

---

[2] At hearing, plaintiff refers to Dr. Davee and Dr. Rudolph. Based on the medical records, the Court believes these references should be to Dr. Bukal Dave and Dr. Adele Roth.

Plaintiff had been recently taken off Dilaudid for his pain and just took Oxycodone. Plaintiff had a driver's license and drove twenty minutes to attend the hearing. He was unable to drive for longer than an hour. (Tr. 43.)

Plaintiff stated that he could not perform a job that consisted primarily of sitting or standing and did not require heavy lifting or carrying because he was constantly lying down, in a reclined position, or getting up and down. (Tr. 44.)

Plaintiff most recently worked at a casino as a security officer and supervisor. He conducted employee evaluations and maintained the scheduling. Prior to this, plaintiff was a police officer and a security officer at a hospital. (Tr. 46.) Plaintiff worked at the hospital for three years as a sergeant, which was a supervisory position that entailed hiring and firing employees. Plaintiff also worked as a patrol officer at a municipal court and as a jailor for approximately one year. In his position as a jailor, plaintiff booked inmates into custody, prepared meals, and broke up altercations. (Tr. 47.)

Plaintiff's primary care physician prescribed him Ativan, but he did not attend counseling because his insurance did not cover it. (Tr. 47.)

Dr. Jeffrey Magrowski, a vocational expert (VE), also testified. The ALJ posed several hypothetical questions regarding a person who could perform sedentary work with various restrictions. The VE testified there were jobs in the national and local economy that such a person could perform. (Tr. 48-51.)

If the hypothetical person had to be off task for twenty percent of an eight-hour workday, he would not be able to hold any position. (Tr. 52-53.) Furthermore, if the individual needed to lie down or recline outside of customary breaks, he would be precluded from holding the identified positions. If the hypothetical individual were confined to sedentary work except that

7

he had to change positions every hour and used a cane to balance, he would be precluded from holding the identified positions. The VE could not identify any jobs that such a person could perform. (Tr. 53.)

### 3. Medical Records

Throughout the relevant period, plaintiff experienced problems with his pancreatitis, liver, and gallbladder and had gastrointestinal issues as well. (Tr. 20.) Plaintiff reported associated back pain on several instances. (Tr. 236, 267, 270, 405, 700, 719, 733.) The ALJ, however, found that "claimant did not really allege that these conditions caused him significant work-related limitations" and that the evidence showed they did not result in limitations that lasted for twelve months or longer. Thus, according to the ALJ, these were not severe impairments. (Tr. 20.) The plaintiff made no objection to this finding, so this medical summary is accordingly focused.

After falling at work in December 2011, plaintiff began experiencing back pain, numbness and tingling in his left leg and problems balancing. (Tr. 680, 776-78.) An MRI showed degenerative disc disease but no acute fracture. (Tr. 682.)

Plaintiff presented to Dr. Buchowski at Washington University Orthopedics in January 2012 with back pain he rated at an eight out of ten in severity. (Tr. 463.) He was diagnosed with L5 and S1 radiculopathy secondary to a left paracentral disc protrusion at the L5-S1 level. Dr. Buchowski recommended a non-operative treatment program consisting of physical therapy and transforaminal epidural steroid injections. He concluded that plaintiff was temporarily completely disabled and unable to return to work. (Tr. 465.)

After attempting physical therapy (Tr. 833-36) and receiving a steroid injection (Tr. 775), plaintiff returned to Dr. Buchowski and reported that his symptoms persisted (Tr. 814.) He also

told Dr. Buchowski he was walking with a cane and wished to proceed with surgery. (Tr. 817.)

Plaintiff underwent a spinal fusion in May 2012. (Tr. 751-55.) The operative findings consisted of recurrent left L5-S1 paracentral disc herniation with severe degenerative disc disease at the L5-S1 level. (Tr. 752.) Plaintiff was discharged with Percocet and Flexeril. He was instructed not to drive for one month and not to stoop, bend, or twist his hips for six weeks. He was also instructed not to bend or lift anything weighing more than ten pounds for four months. (Tr. 757.)

Plaintiff attended several follow-up clinical and radiographic evaluations with Dr. Buchowski following his fusion. During each evaluation, physical examination demonstrated that plaintiff walked with a mildly antalgic gait, stood in normal alignment, and had normal motor strength throughout his lower extremities with some exception, could squat down and rise back up. (Tr. 262, 349, 381, 385, 402, 831, 863, 907.)

Radiographs generally demonstrated posterior spinal fusion with instrumentation and TLIF (transforaminal lumbar interbody fusion) at L5-S1 and all implants appeared to be in good position with no evidence of implant loosening or failure. (Tr. 263, 386, 863.) Dr. Buchowski noted after each evaluation that plaintiff was temporarily completely disabled. (Tr. 263, 350, 386, 403, 465, 815, 818, 863.)

Plaintiff did "really well" immediately after surgery. His left lower extremity radicular symptoms were initially resolved, and his low back pain had improved. However, in June 2012 Plaintiff reported an exacerbation of his low back pain with radiation into his right lower extremity. He was taking Gabapentin, Hydrocodone, and Flexeril for pain relief. He stated that while his pain was manageable, it was still significant. (Tr. 402.) Dr. Buchowski prescribed plaintiff a Medrol Dosepak and told plaintiff to increase his dosage of Gabapentin. (Tr. 403.)

In September 2012, Dr. Buchowski reviewed an MRI of plaintiff's spine and opined that his symptoms were due to scarring around the left S1 nerve root. He recommended plaintiff take Gabapentin or Pregabalin. Dr. Buchowski also recommended injections if symptoms persisted. (Tr. 381.) Plaintiff eventually received injections on several occasions (Tr. 284, 920, 946.)

Dr. David Lange conducted two independent spine evaluations of plaintiff in 2013. (Tr. 870, 899.) Plaintiff reported using a cane, not being able to walk for any period, and falling twice during his clinical course. Dr. Lange noted that Waddell testing was somewhat more than moderately positive. He also found that plaintiff had no overt difficulty ambulating. He opined plaintiff would likely not test much beyond the sedentary physical demand level, and the best approach would be for plaintiff to ween off his narcotics. (Tr. 871.)

Upon recommendation from Dr. Buchowski, plaintiff underwent pain and medication management during 2014. (Tr. 931, 944, 947, 950, 953, 956.) Physicians noted that plaintiff walked with a cane. (Tr. 933, 956.) He was diagnosed with lumbar DDD,[3] lumbar failed back surgery syndrome, and chronic pain. (Tr. 941.) Plaintiff began using a spinal cord stimulator. (Tr. 950.)

During pain management, plaintiff stated that remaining in any position for too long or standing exacerbated his pain. (Tr. 944.) He also stated at various points that the pain interfered with his sleep, general activity, mood, normal work, relationships with others, enjoyment of life, and ability to concentrate. (Tr. 931, 944, 947, 950, 953, 956.)

On September 16, 2014, plaintiff attended a pain management evaluation and stated his left leg numbness was getting worse, but the spinal cord stimulator was helping with pain. Plaintiff began using his cane again due to numbness and weakness. He rated his pain at a six

---

[3] "DDD" is an acronym for degenerative disc disease. 1 Medical Information System for Lawyers § 6:202 (2d ed. 2016).

out of ten. His mobility was listed as "Independent and Antalgic." (Tr. 956.) The physician noted that plaintiff's power was decreased in his left lower extremity, and sensations to light touch were decreased in the left L4, L5 area. (Tr. 958.)

    4.    **State Agency Consultant RFC Assessment**

Dr. Gotway conducted an RFC of plaintiff in May 2013. (Tr. 56-65.) He diagnosed plaintiff with DDD (Disorder of Back-Discogenic and Degenerative), inflammatory bowel disease, and essential hypertension. He found plaintiff partially credible, and noted that Dr. Buchowski "[did] not mention to use of a cane in his records," but plaintiff reported that he was prescribed a cane. (Tr. 60.) Dr. Gotway determined that plaintiff could occasionally lift and/or carry ten pounds; stand and/or walk for a total of two hours; sit for a total of approximately six hours in an eight-hour workday; and push and/or pull an unlimited amount; and must periodically alternate sitting and standing to relive pain and discomfort. (Tr. 61.) Furthermore, plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds. (Tr. 61-62.) He opined that plaintiff should also avoid even moderate exposure to hazards. (Tr. 62.) Dr. Gotway ultimately found that plaintiff had the RFC to perform sedentary work. (Tr. 64.)

## Analysis

The Court turns first to whether the ALJ erred when he did not instruct the VE to consider cane usage in the hypothetical RFC. Plaintiff urges this necessitates remand because the VE testified that dependence on a cane would preclude plaintiff from performing the sedentary jobs identified at the hearing.

Similar arguments were made in *Tripp v. Astrue*, 489 F. App'x 951 (7th Cir. 2012), and *Thomas v. Colvin*, 534 F. App'x 546 (7th Cir. 2013). In *Thomas*, the Seventh Circuit Court of

Appeals held that the ALJ's failure to address Thomas's need for a cane required remand because "the ALJ ignored virtually all the evidence in the record demonstrating Thomas's need for a cane" and "did not say more or address the extensive other evidence concerning Thomas's need for a cane." *Thomas*, 489 F. App'x at 550. The "extensive other evidence" included doctor notes describing repeated falls, a prescription for a cane, questionnaires the plaintiff submitted to the agency explaining her need for a cane, doctors' observations that plaintiff used a cane, and "most concerning, the presence of the cane at Thomas's hearing and her testimony about why she needed it." *Id.*

Alternatively, in *Tripp*, the Seventh Circuit Court of Appeals held that the ALJ was not required to consider Tripp's use of crutches because the ALJ never found that they were medically necessary. *Tripp*, 489 F. App'x at 955. It was noted that "[a] finding of necessity must rest on 'medical documentation establishing the need for a hand-held assistive device to aid in walking and standing, and describing the circumstances for which it is needed.'" *Id.* (quoting SSR-96-9p). The court pointed out that references to Tripp's use of crutches in the record were traceable to self-reports and physicians' observations. *Id.* The court held that absent an "unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary," the ALJ's determination was not error. *Id.*

Here, the evidence in the record regarding plaintiff's use of a cane is more akin to the circumstances in *Tripp* than in *Thomas*. As noted by the ALJ, plaintiff reported that "he could walk less than a block with a cane before he had to rest for several minutes," and "examiners observed that the claimant limped and used a cane." (Tr. 22-23.) The record also includes instances where plaintiff reported to his physician that he had fallen, although the ALJ makes no reference to them. Aside from self-reported usage and observations by physicians, the record

12

does not contain "extensive" evidence that would necessitate a finding of medical necessity by the ALJ. There is no prescription for a cane or an "unambiguous" medical opinion that plaintiff needed a cane. The ALJ determined that, although some examiners observed that plaintiff limped and used a cane, "most of the time they observed he had only a mildly antalgic gait," and "[a]t other times, examiners observed that the claimant's gait was normal." (Tr. 23.) Substantial evidence in the record, in the form of "essentially normal examinations," supports the ALJ's determination to exclude plaintiff's cane usage from the RFC assessment. (Tr. 23.) Although the ALJ could have more diligently addressed plaintiff's cane usage, the ALJ's determination need not be flawless, as long as it is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Thus, the ALJ did not err by excluding plaintiff's cane usage in assessing his RFC.

Plaintiff also argues that the ALJ erred by not addressing plaintiff's diagnosis of failed back surgery syndrome (FBSS). Although unclear, plaintiff's argument seemingly has two parts: (1) the ALJ should have found that plaintiff's FBSS constituted a severe impairment; and (2) the ALJ should have considered the diagnosis in assessing plaintiff's subjective complaints.

The determination of whether a plaintiff suffers from a severe impairment is "merely a threshold requirement," and if the ALJ "determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process." *Curvin v. Colvin*, 778 F.3d 645, 648 (7th Cir. 2015) (quoting *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010)). Therefore, so long as the ALJ finds at least one severe impairment, continues to the next steps, and "consider[s] all of [plaintiff's] severe and non-severe impairments, the objective medical evidence, [his] symptoms, and [his] credibility when determining [his] RFC immediately after

step 3," any mistake in evaluating the plaintiff's severe impairments is harmless. *Id.* at 649-50.

Since the ALJ found at least one severe impairment and continued on to assess plaintiff's RFC, the ALJ did not commit reversible error so long as he properly addressed plaintiff's diagnosis of FBSS in the third step.

FBSS is "a term that refers to persistent back pain after surgery." *Filus v. Astrue*, 694 F.3d 863, 865 (7th Cir. 2012). Although the ALJ did not directly refer to FBSS, he took notice of plaintiff's fusion and then acknowledged plaintiff's subsequent back issues. For instance, the ALJ cited plaintiff's diagnosis of radiculopathy, abnormal radiographs of plaintiff's lumbar spine, plaintiff's decreased sensation and lower extremity weakness, and plaintiff's own complaints of back pain and the resulting limitations. (Tr. 22.) Thus, merely failing to use the label "FBSS" is not a reversible error because it would not substantively change the ALJ's analysis.

Plaintiff next asserts that the ALJ erred by not addressing plaintiff's pain medications and spinal cord stimulator (SCS). "[A]lthough an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

The ALJ here held in boilerplate fashion that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 22.) The ALJ mentioned that plaintiff stated his back pain precluded him from working and performing other activities and required him to lie down most of the day. The ALJ also mentioned plaintiff's

steroid injections and fusion surgery. The ALJ ultimately gave less credence to plaintiff's subjective complaints because plaintiff "drove short distances . . . which is not quite indicative of his allegations [of difficulty dressing and bathing]," plaintiff exhibited "essentially normal examinations," and Dr. Lange noted, "Waddell testing was somewhat more than moderately positive." (Tr. 22-23.)

Throughout this analysis, however, the ALJ wholly failed to acknowledge plaintiff's prescriptions for strong pain medications, such as Oxycodone and Gabapentin, and his SCS. The Seventh Circuit Court of Appeals has noted that this particular evidence may be significant, given the unlikelihood that a plaintiff would undergo pain treatment involving "heavy doses of strong drugs" and surgical implantation such as a SCS merely to increase his chances of obtaining DIB. *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004). Moreover, 20 C.F.R. § 404.1529(c)(3) provides that the ALJ will consider the plaintiff's treatments, as well as "[t]he type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate [] pain or other symptoms." Because the ALJ failed to "confront the evidence that does not support [his] conclusion and explain why that evidence was rejected," the ALJ's determination cannot be meaningfully reviewed and remand is required. *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

In conclusion, the ALJ erred in assessing plaintiff's RFC, because he did not address plaintiff's pain medication or SCS. However, the ALJ adequately addressed plaintiff's diagnosis of FBSS, albeit not by name. Additionally, the ALJ's decision to exclude plaintiff's cane usage from the RFC determination was supported by substantial evidence in the record, and therefore will not serve as grounds for reversal.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**
**DATE:  June 19, 2017**

                                              s/ J. Phil Gilbert
                                              **J. PHIL GILBERT**
                                              **DISTRICT JUDGE**